

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00180-CV

**IN THE INTEREST OF M.P.M.**, a Child

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA00196
Honorable Marisa Flores, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Luz Elena D. Chapa, Justice
Beth Watkins, Justice

Delivered and Filed: September 6, 2024

AFFIRMED

H.A. appeals the trial court's order terminating her parental rights to her three-year-old daughter, M.P.M. On appeal, she argues the evidence is legally and factually insufficient to support the trial court's predicate findings under subsections (D), (E), and (O), and termination is in M.P.M.'s best interest. We affirm.

### BACKGROUND

In February 2023, the Department of Family and Protective Services ("the Department") filed the underlying suit to remove M.P.M. from H.A.'s care and terminate H.A.'s parental rights after San Antonio police arrested H.A. for assault. The Department created a family service plan for H.A. and placed M.P.M. with her maternal grandmother until she was unable to care for M.P.M. Thereafter, the Department placed M.P.M. with a foster family. When H.A. did not complete her

service plan, the Department proceeded with its termination suit. At a one-day bench trial on January 11, 2024, the trial court heard testimony from the following witnesses: the officer who arrested H.A. for assault, two Department caseworkers, a Department investigator, H.A.'s therapist, a Department employee who provided H.A. with transportation to visit M.P.M., and H.A. The trial court ultimately terminated H A.'s parental rights pursuant to section 161.001(b)(1)(D), (E), (O), and (P) of the Texas Family Code. *See* TEX. FAM. CODE §§ 161.001(b)(1)(D), (E), (O), and (P). It also found termination of her parental rights was in M.P.M.'s best interest. *See id*. § 161.001(b)(2). On appeal, H.A. argues the evidence is legally and factually insufficient to support the trial court's predicate (D), (E), and (O) findings and its best interest finding.

ANALYSIS

***Standard of Review***

An order terminating parental rights must be supported by clear and convincing evidence showing (1) the parent has committed one of the grounds for involuntary termination as listed in section 161.001(b)(1) of the Texas Family Code, and (2) termination is in the child's best interest. *See id*. § 161.001(b). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007. To determine whether this heightened burden of proof was met, we use a heightened standard of review to decide whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). "This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.). Under it, the factfinder is the sole judge of the weight and credibility of the evidence, including the witnesses' testimony. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). We do not reweigh witness

credibility issues, and we "defer to the [factfinder's] determinations, at least so long as those determinations are not themselves unreasonable." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)) (internal quotation marks omitted).

"When reviewing the sufficiency of the evidence, we apply the well-established [legal and factual sufficiency] standards." *In re J.M.G.*, 608 S.W.3d 51, 53 (Tex. App.—San Antonio 2020, pet. denied) (alteration in original) (quoting *In re B.T.K.*, No. 04-19-00587-CV, 2020 WL 908022, at *2 (Tex. App.—San Antonio Feb. 26, 2020, no pet.) (mem. op.)). A legal sufficiency review of the evidence requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *J.O.A.*, 283 S.W.3d at 344 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)) (internal quotation marks omitted). We must assume "the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," and we "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id*. (quoting *J.F.C.*, 96 S.W.3d at 266) (internal quotation marks omitted). However, we do not disregard undisputed evidence even if it does not support the trial court's finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence. *See id*. (citing *J.F.C.*, 96 S.W.3d at 266).

Under a factual sufficiency review, we perform "an exacting review of the entire record" and consider disputed or conflicting evidence. *In re A.B.*, 437 S.W.3d 498, 500, 503 (Tex. 2014); *J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.O.A.*, 283 S.W.3d at 345 (quoting *J.F.C.*, 96 S.W.3d at 266) (internal quotation marks omitted).

## *Predicate Grounds*

### A. Only One Predicate Ground is Necessary

H.A.'s parental rights were terminated pursuant to multiple predicate grounds, specifically (D), (E), (O), and (P). However, she challenges the trial court's findings under only subsections (D), (E), and (O); she does not challenge the trial court's finding under subsection (P). If, as here, the trial court terminates the parent-child relationship on multiple grounds under section 161.001(1), we may affirm on any one ground because, in addition to finding that termination is in the child's best interest, only one predicate violation under section 161.001(1) is necessary to support a termination order. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re F.B.C.L.*, No. 04-20-00477-CV, 2021 WL 1649221, at *1 (Tex. App.—San Antonio Apr. 28, 2021, no pet.) (mem. op.) ("Only one termination ground—in addition to a best interest finding—is necessary to affirm a termination judgment on appeal."). Accordingly, because H.A. has not challenged the trial court's finding under subsection (P), we need not reach H.A.'s sufficiency argument relating to subsection (O). *See id.*

However, we must still consider H.A.'s issues relating to the sufficiency of the evidence to support the trial court's findings under subsections (D) and (E). Because termination findings under subsections (D) and (E) may serve as the basis for a future termination of parental rights proceeding, the Texas Supreme Court has explained due process requires us to address any appellate issue regarding the sufficiency of the evidence of a trial court's finding under either subsection (D) or (E). *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019); *see also In re M.P.*, 639 S.W.3d 700, 702 (Tex. 2022) (per curiam) ("Only one predicate ground and a best interest finding are necessary for termination," but "due process requires that courts also review termination under Subsections 161.001(b)(1)(D) and (E) even after affirming termination on another ground because of the collateral effects of termination on those grounds.").

### B. Termination Pursuant to Subsection (D)

To terminate parental rights pursuant to subsection (D), the Department must prove by clear and convincing evidence the parent knowingly placed the child in or allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being. TEX. FAM. CODE § 161.001(b)(1)(D); *In re I.N.D.*, No. 04-20-00121-CV, 2020 WL 2441375, at *3 (Tex. App.—San Antonio May 13, 2020, pet. denied) (mem. op.). "Conditions or surroundings" establishing endangerment include "[i]nappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis." *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.).

"Endanger," as used in subsection (D), means to expose to loss or injury or to jeopardize a child's emotional or physical health. *See Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (construing predecessor statute). An environment that endangers the child may be created by the physical living conditions in the child's home or by the conduct of a parent living in the home. *In re R.S.-T.*, 522 S.W.3d 92, 108–09 (Tex. App.—San Antonio 2017, no pet.). "For example, abusive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child." *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "Parental and caregiver illegal drug use and drug-related criminal activity likewise supports the conclusion that the children's surroundings endanger their physical or emotional well-being." *Id*.

A parent knowingly places or allows a child to remain in an endangering environment when the parent is aware of the potential danger but disregards it. *M.R.J.M.*, 280 S.W.3d at 502. A child may therefore be endangered when the home environment creates a potential for emotional or physical injury; the injurious conduct does not need to be directed at the child, and the child does

not need to suffer injury for the requirements of subsection (D) to be met. *Boyd*, 727 S.W.2d at 533; *I.N.D.*, 2020 WL 2441375, at *3.

"The relevant period for review of conduct and environment supporting termination under statutory ground (D) is before the Department removes the child." *R.S.-T.*, 522 S.W.3d at 109 (citing *In re J.O.A.*, 283 S.W.3d at 345). Subsection (D) permits termination based upon only a single act or omission. *Id.*

### C. Termination Pursuant to Subsection (E)

Under subsection (E), "endangerment" has the same definition as in subsection (D), but the grounds of subsections (D) and (E) are otherwise different. *See Boyd*, 727 S.W.2d at 533. To terminate parental rights pursuant to subsection (E), the Department must prove by clear and convincing evidence the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being. TEX. FAM. CODE § 161.001(b)(1)(E). Under subsection (E), the trial court must determine "whether there is evidence that a parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being." *In re C.J.G.*, No. 04-19-00237-CV, 2019 WL 5580253, at *2 (Tex. App.—San Antonio Oct. 30, 2019, no pet.) (mem. op.). Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re J.W.*, 152 S.W.3d 200, 205 (Tex. App.—Dallas 2004, pet. denied). The course of conduct may include a parent's actions and failures to act. *In re M.J.M.L.*, 31 S.W.3d 347, 351 (Tex. App.—San Antonio 2000, pet. denied). Scienter is not required for a parent's own acts or omissions; proof of the parent's knowledge is required only when the allegation is the parent placed the child with others who endangered the child. *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *4 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.).

The Department does not have to prove the parent directed the endangering conduct at the child, did the conduct in the presence of the child, or caused an actual injury or threat of injury to the child. *Boyd*, 727 S.W.2d at 534; *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 616–17 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *M.J.M.L.*, 31 S.W.3d at 351. The danger to the child's well-being may be inferred from the nature of the parent's misconduct alone. *Boyd*, 727 S.W.2d at 533. Thus, in considering whether a course of conduct that endangers the child's physical or emotional well-being has been established, the trial court may consider evidence of the parent's conduct both before and after the child's birth, including conduct occurring after the child was removed from the parent's care. *K.J.G.*, 2019 WL 3937278, at *4; *Walker*, 312 S.W.3d at 617.

## D. The Evidence at Trial Addressing Grounds (D) and (E)

H.A. argues there is legally and factually insufficient evidence to support termination of her parental rights under either subsection (D) or (E) because there was no evidence of any potential danger or harm to M.P.M. She further argues there was no evidence showing she knew or had reason to know there was a gun in the home.

Here, the trial court heard evidence showing domestic violence occurred between H.A. and her ex-boyfriend, I.J. in front of M.P.M. San Antonio police officer Orlando Jimenez Guerrero testified he encountered H.A. in January 2023, when he was dispatched to her home around midnight for a family disturbance. He testified when he arrived to H.A.'s home, the scene was "chaotic and loud," and H.A. and I.J. had been involved in an altercation. He did not observe any injuries on H.A., but he noticed a "big bite mark" on I.J.'s arm. After speaking with H.A. and I.J., he concluded H.A. was the main aggressor, and he arrested her for assault. He testified M.P.M. was in the home and awake during the assault, and she "looked scared" and appeared "upset and

traumatized." Officer Guerrero further testified he was familiar with H.A. because he had been to her home two previous times for family disturbance calls due to altercations between her and I.J.

The trial court also heard testimony from Department caseworker Erika Vasquez, who testified H.A. had exposed M.P.M. to multiple incidents of domestic violence from July 2022 until January 2023. Vasquez testified as early as July 2022, she began working with H.A. because of concerns H.A. and I.J. were exposing M.P.M. to domestic violence. Vasquez further testified she continued working with the family at the time of M.P.M.'s removal and spoke to H.A. about the domestic violence incident described by Officer Guerrero. H.A. denied "the incident played out that way," but stated she had been involved in previous domestic violence incidents with I.J. and M.P.M.'s father. Vasquez testified H.A. specifically told her about a time she had stabbed M.P.M.'s father in the leg with a screwdriver. Vasquez also testified H.A. admitted M.P.M. was present during each of these domestic violence incidents and was "very vulnerable" because she was only two years old at the time of the incidents.

Vasquez also testified in addition to the January 2023 referral regarding domestic violence, the Department had received another referral that same month, alleging H.A. was engaged in illegal substance abuse while caring for M.P.M. Vasquez testified she spoke with H.A. at this time, and H.A. was uncooperative "but admitted to using methamphetamine" and marijuana. H.A. further admitted to her she used these drugs while caring for M.P.M. In addition to Vasquez's testimony regarding H.A.'s illegal substance abuse, Department investigator Johnathan Kim testified he began working with H.A. in January 2023. Kim testified H.A. also admitted she was using illegal substances while caring for M.P.M. Mary Padilla Salazar, another Department caseworker, testified she began working with H.A. in 2023, and her main concern was H.A.'s inability to maintain sobriety. Salazar testified since July 2022, H.A. had failed to complete all her services related to drug treatment. She also testified the Department provided several

accommodations to H.A., including providing her with transportation to and from services, and H.A. continued to regularly miss drug testing appointments. She testified H.A. took only two of the thirty-three requested drug tests.

The trial court also heard testimony from Victoria Caylor, H.A.'s therapist, who began treating H.A. in July 2023. Caylor testified she met with H.A. seven times and ultimately discharged her because she failed to comply with treatment. Caylor testified she specifically spoke with H.A. about domestic violence and believed H.A. needed to attend domestic violence classes. She testified H.A. had a lot of anxiety because of past trauma she had experienced. Caylor explained H.A. told her she grew up in the foster care system and became involved in human sex trafficking when she was sixteen. Due to anxiety, H.A. carried a weapon, specifically a kitchen knife and pepper spray with her at all times. Caylor also testified a parent should not keep her child in a domestic violence situation or expose her child to illegal substance abuse like H.A. had. According to Caylor, she believed H.A. needs "to participate in counseling and deal with her trauma honestly. She needs to do the domestic violence [class], and that might be more than one or two venues, service providers. Parenting and substance abuse [classes] could really help."

The next witness, Katherine Maria Killion, testified she worked with Child Protective Services as a human service technician, and she would provide transportation for clients to and from their services. She testified she began providing H.A. with transportation in September 2023, and H.A. was "very cooperative." However, on the Monday before trial, H.A. admitted to her on the way to a drug test, she had smoked marijuana that morning and would not pass the test.

The trial court then heard testimony from H.A., who admitted she had not completed the requirements of her service plan focused on domestic violence and illegal substance abuse. She testified she needed to attend two more sessions of her domestic violence classes, but she completed her drug treatment program with Lifetime Recovery and was starting drug counseling

services with Elite Counseling. She further admitted she did not consistently comply with drug testing, and she had smoked marijuana as recently as two weeks before trial. She also admitted she used methamphetamine in the past while she was experiencing homelessness until she became pregnant with M.P.M. She testified she had M.P.M. while she was living in a shelter for pregnant women. H.A. further testified by the time she gave birth to M.P.M., the Department had removed her son from her care, and she ultimately relinquished her parental rights to him because she was unable to care for him. She stated after she had M.P.M., she left the shelter, moved into an apartment, and began seeing I.J. She admitted M.P.M. was living in a domestically violent home while I.J. lived with them, but she was able to provide M.P.M. with all her daily needs, including food and medical treatment.

### E. Application

Here, when considering the evidence in the light most favorable to the trial court's finding, we conclude the trial court could have formed a firm belief or conviction H.A. knowingly placed M.P.M. in conditions or surroundings endangering her physical or emotional well-being. *See J.T.G.*, 121 S.W.3d at 125, 127 (reasoning violent conduct by parent produces environment endangering child's physical and emotional well-being and affirming termination of parental rights on subsection (D) grounds where record showed pattern of continued violence and abuse of parent). Here, the evidence shows H.A. exposed M.P.M. to multiple episodes of domestic violence before her removal, and the trial court could have concluded H.A. would continue to not protect M.P.M.'s emotional well-being in the future because H.A. had not completed her domestic violence classes. *See In re O.E.R.*, 573 S.W.3d 896, 906 (Tex. App.—El Paso 2019, no pet.) (explaining mother demonstrated inability to protect children by continuing to engage in relationships with abusive partners). The evidence also shows M.P.M. was young and vulnerable

and specifically "looked scared," "upset[,] and traumatized" when Officer Guerrero visited the home.

Moreover, the evidence establishes H.A. had an unresolved history of drug abuse. *See In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at \*5 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.) (reasoning mother's continued drug use during the pendency of her termination case supported termination under subsection (D)); *J.T.G.*, 121 S.W.3d at 125 ("Drug addiction and its effect on a parent's life and ability to parent may establish an endangering course of conduct, as a basis for terminating parental rights."). She did not attend several scheduled drug testing appointments, and the trial court could have inferred she continued to use drugs. *See In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied) ("The trial court may infer from a refusal to take a drug test that appellant was using drugs."). In fact, H.A. admitted to using drugs before and during the case. Accordingly, when considering the evidence in the light most favorable to the trial court's finding, we conclude it is legally sufficient to support the trial court's subsection (D) finding. *See J.O.A.*, 283 S.W.3d at 344. We further conclude, when viewing the entire record, the disputed evidence is not so significant so as to prevent the trial court from forming a firm belief or conviction termination of H.A.'s parental rights was justified under subsection (D). *See id*. at 345. The evidence is therefore factually sufficient. *See id*.

Based on these facts, the trial court could also have formed a firm belief or conviction termination of H.A.s parental rights was justified under subsection (E) because H.A. engaged in conduct endangering M.P.M.'s physical or emotional well-being because of the ongoing exposure to domestic violence and illegal drug use. *See In re P.W.*, 579 S.W.3d 713, 727 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("Evidence of domestic violence may be considered as evidence of endangerment under subsection (E)."); *In re S.R.*, 452 S.W.3d 351, 361-62 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (reasoning parent's drug use may be considered as

establishing endangering conduct under subsection (E)). Here, the trial court heard testimony describing more than a single incident of domestic violence and drug use; the evidence established H.A. engaged in a course of conduct, exposing M.P.M. to several episodes of domestic violence between herself and I.J. as well as continued drug use. *See P.W.*, 579 S.W.3d at 727 (explaining exposing children to domestic violence constitutes conduct that produces home environment that endangers child's well-being); *S.R.*, 452 S.W.3d at 361 ("A parent's drug use can also qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being."). The trial court also heard testimony from Department caseworkers and H.A. indicating H.A. used illegal drugs while caring for M.P.M. Accordingly, when considering the evidence in the light most favorable to subsection (E), we conclude the evidence is legally sufficient. *See J.O.A.*, 283 S.W.3d at 344. We further conclude, when reviewing the entire record, including the disputed evidence contrary to the subsection (E) finding, the evidence is factually sufficient. *See id*. at 345.

### *Best Interest*

### A. Applicable Law

In Texas, there is a strong presumption a child's best interest is served by keeping the child with the parent, and the burden is on the Department to rebut this presumption with clear and convincing evidence. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam); *In re I.I.T.*, 648 S.W.3d 467, 476 (Tex. App.—San Antonio 2021, no pet.). When considering the evidence produced, the trial court must presume a child's prompt and permanent placement in a safe environment is in the child's best interest. TEX. FAM. CODE § 263.307(a). The Texas Legislature has also provided a list of statutory factors set forth in section 263.307(b) of the Texas Family Code[1] to aid courts in determining whether a parent is willing and able to provide the child with a

---

[1] These factors include: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the

safe environment. *Id.* § 263.307(b); *I.I.T.*, 648 S.W.3d at 476–77. And, the Texas Supreme Court has provided a similar list of factors outlined in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) to help determine a child's best interest.[2] Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest—especially when the evidence shows the parental relationship endangered the child's safety." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.).

Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *C.H.*, 89 S.W.3d at 28. And "[a] trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A best-interest analysis may [also] consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *Id.*

---

child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child or the child's parents; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system is available to the child. *See id*.

[2] These factors are (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *See id.*

**B. The Evidence at Trial Addressing Best Interest**

At the time of trial, M.P.M. was three years old and too young to express her desires. When a child is too young to express her desires, the factfinder may consider whether the child has bonded with her foster family, is well-cared for by them, and has spent minimal time with her parent. *See In re N.J.D.*, No. 14-17-00711-CV, 2018 WL 650450, at *6 (Tex. App.—Houston [14th Dist.] Feb. 1, 2018, pet. denied) (mem. op.). Department caseworker Padilla testified M.P.M.'s foster family was meeting her needs and taking her to regular medical appointments and trauma therapy. Padilla testified the foster family was licensed to adopt and willing to care for M.P.M. permanently. Padilla further testified she had observed the foster family playing with M.P.M. and being "very engaged." According to Padilla, the family was focused on teaching M.P.M. how to speak, and M.P.M. had "come a long way as far as developmentally." Padilla also testified she had observed visits between H.A. and M.P.M., and the two of them shared a bond. Padilla testified M.P.M. was not distressed by H.A.'s visits, and H.A. brought appropriate items for M.P.M. to play with.

Additionally, the trial court heard testimony H.A. did not complete her family service plan, and such evidence is probative of the children's best interest. *See, e.g.*, *In re B.R.T.*, No. 04-22-00416-CV, 2023 WL 29381, at *6 (Tex. App.—San Antonio Jan. 4, 2023, no pet.) (mem. op.). The service plan required H.A. to obtain and maintain stable housing and employment, attend scheduled visitations with M.P.M., complete parenting and domestic violence classes, complete a drug and alcohol assessment, comply with random drug and alcohol testing, attend individual counseling, and participate in a psychological evaluation. As indicated above, H.A. did not complete her domestic violence classes, the recommendations of her drug and alcohol assessment, or her individual counseling; she also missed most of her drug testing appointments.

During trial, H.A. explained she took methamphetamine and smoked marijuana to deal with her past. She testified she had been placed in the foster care system when she was thirteen or fourteen years old, and when she turned sixteen, she ran away, was kidnapped, and became subjected to human trafficking. She further testified she experienced homelessness for two years, and during this time, she gave birth to a son and voluntarily relinquished her parental rights to him. She then had M.P.M. and started living with I.J. She admitted she stayed with I.J. even though he subjected her to "tons of abuse" because she was trying to make the relationship work. She further testified she eventually broke up with I.J. She also testified she was unable to attend all her counseling appointments due to poor internet connectivity, and she was unable to submit to random drug testing because the tests were repeatedly scheduled during her visits with M.P.M., domestic violence classes, or therapy appointments. However, she was motivated to complete her services and reunite with M.P.M.

When asked about her housing and employment, H.A. testified she was receiving a housing voucher from Bexar County and living in an apartment. She also testified she was planning to start a remote job once she bought a computer. When asked whether her housing and employment was stable, H.A. testified it was "kind of iffy," and she would need to figure out how to take care of M.P.M. and work at the same time.

Department caseworker Padilla also addressed H.A.'s compliance with the service plan. She testified when Caylor discharged H.A. from individual therapy treatment, the Department set up H.A. with another counselor, Patricia Boone. However, H.A. was a "no show" for the first appointment, and eventually, Boone discharged her. Padilla also testified she visited H.A. in her apartment, and there was very little food and furniture in the apartment. Several "unknown individuals" were also present in the apartment, and Padilla later learned one of the individuals was I.J.'s sister. Padilla testified she was concerned H.A. would continue to subject M.P.M. to an

unsafe environment, and it was unclear whether H.A. could provide M.P.M. with basic needs, such as food, clothes, and housing. Padilla also testified H.A. told her she was unemployed and was not receiving any outside income to help her with necessities.

### C. Application

When looking at this evidence in the light most favorable to the trial court's best interest finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction termination of H.A.'s parental rights was in M.P.M.'s best interest. *See J.O.A.*, 283 S.W.3d at 344–45. Here, a trier of fact could reasonably conclude despite H.A.'s bond with M.P.M., H.A. failed to complete her service plan and was unable to maintain stable housing and employment. A trier of fact could further conclude H.A. did not demonstrate a willingness to effectuate positive changes within a reasonable time period. Moreover, the evidence of H.A.'s history of domestic violence and drug use, supporting the trial court's findings under subsections (D) and (E), is probative on the issue of best interest. *See, e.g.*, *C.H.*, 89 S.W.3d at 28. And a trier of fact could reasonably conclude H.A. would continue to expose M.P.M. to an endangering environment and course of conduct affecting her overall well-being. To the extent H.A. testified to the contrary, the evidence was not so significant as to prevent the trial court from forming a firm belief or conviction termination of H.A.'s parental rights was in M.P.M.'s best interest. *See J.O.A.*, 283 S.W.3d at 344–45. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule H.A.'s final issue.

### CONCLUSION

The trial court's order of termination is affirmed.

Luz Elena D. Chapa, Justice